**HODGES et al. v. MILLER et ux.***
(No. 9712.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 14, 1922. Rehearing Denied Feb. 25, 1922.)

1. **Appeal and error ⬅️⟞1138—Questions arising in suit to cancel lease held moot after term specified therein had expired.**

In a suit to cancel an oil and gas lease purporting to be for four years, which plaintiffs claimed was intended to be for only three years, the questions whether the term was fixed at four years through fraud or mistake, and whether the assignees of the lease were innocent purchasers without notice, *held* moot after four years had expired.

2. **Mines and minerals ⬅️⟞75—Assignee of lease not entitled to extension to offset time drilling operations were suspended because of notice from lessors.**

Where lessors under an oil and gas lease purporting to be for four years, claiming that it was intended to be for only three years, gave an assignee of the lease notice that it would expire at the end of the three years, but obtained no injunction and used no force or threats of violence to prevent the assignees from

pursuing their intended drilling operations, they were not entitled to an extension of the lease on the ground that they were prevented by such notice from proceeding with the drilling operations.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Suit by John M. Miller and wife against E. A. Hodges and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Gross & Zinley, of Mineral Wells, for appellants.

Chandler & Pannill, of Stephenville, and P. C. Sanders, of Strawn, for appellees.

DUNKLIN, J. E. A. Hodges and others who were assignees of an oil and gas lease on 776 acres of land in Palo Pinto county have appealed from a judgment in favor of J. M. Miller and wife, the owners of the title to the land, canceling the lease.

The lease was made to D. R. Low, who assigned different portions of the tract to appellants respectively. The lease was dated August 14, 1917, and by its terms it continued for four years from its date, hence expiring August 14, 1921.

According to allegations in plaintiffs' petition, the lease was procured from them by fraudulent misrepresentations on the part of the agent of the lessees, inducing them to believe that it covered a period of three years, rather than four years, from its date. According to further allegations in the petition, it was intended and understood by the parties to the instrument that the lease should extend for only three years from its date, and, based upon those allegations, plaintiffs sought to have the instrument reformed so as to conform to that understanding.

By the terms of the lease the lessees had the right to continue the same in full force for four years by paying stipulated rentals without the necessity of drilling a well on the land. All the stipulated rentals for the period of three years were paid and accepted by the plaintiffs. But they refused to accept the rentals covering the fourth year, six months of which were tendered in accordance with the provisions of the lease. Plaintiffs' refusal to accept rentals for any part of the fourth year was by reason of their contention that the lease was for a period of three years only. The defendants were all assignees of the original lessee, and pleaded that they were innocent purchasers without notice of the fraud or mutual mistake pleaded by the plaintiffs inducing them to execute the lease for four years instead of three years.

The case was tried before the court without a jury, and the trial judge found adversely to plaintiffs' allegations of fraud, but sustained the allegations to the effect that by mutual mistake of the parties the lease stipulated that it should continue for four years rather than three years, as intended by both parties. But the court further found that the description of the land as contained in the lease was insufficient to describe the land in controversy, in that it omitted any showing that the land was situated in Palo Pinto county, Tex., the description being silent upon the location of the land; and, based on that finding, the trial judge held the right of the defendants to hold the lease on the land in controversy by reason of the understanding and intention of the parties to the lease that the land in controversy was the land intended to be covered by the lease, as pleaded by the defendants and as established by uncontroverted testimony of the plaintiffs themselves. The defendants further pleaded that shortly before the expiration of the third year of the lease they were notified by plaintiffs that the lease would terminate at the end of the three-year period, and that at the time of receiving such notice they were preparing to begin a well which they intended to prosecute with due diligence until the same should be finished, but that they were prevented from so doing by reason of the notice given to them by the plaintiffs. The trial judge found that a few days before the termination of the third year of the lease plaintiffs did notify appellant Thompson, who was the assignee and holder of the lease on 276 acres of the tract in controversy, that the lease would expire on August 14, 1920, the end of the third year, that at the time of such notice Thompson was preparing to begin a well and would have begun and prosecuted the same with due diligence but for such notice, and that by reason of such notice Thompson and all the other defendants refrained from drilling operations. But the trial judge further found, in effect, that the lease was invalid for lack of a showing in the description of the land that it was located in Palo Pinto county, and that the right of the defendants to have it so reformed as to show such location and therefore to give a correct description was an equitable right only, which would not support the plea of innocent purchaser urged by the defendants. There was a further finding that at all events the lease was merely an option after the termination of the first year, within the meaning of the decision in National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979, and for that further reason the defense of innocent purchaser was not available. The lease contained a further provision to the effect that the beginning and prosecution of drilling operations with diligence would obviate further payment of rentals, and, if oil in paying quantities should be discovered, that fact would continue the lease in force as long as oil should be produced in paying quantities from the land.

[1, 2] It thus appears that the full four-year term originally covered by the lease has already expired, and all of the questions raised by these assignments and discussed in the briefs of counsel for both sides have become moot, and therefore are unnecessary to be determined, save and except the one contention presented by appellants to the effect that under the facts found by the trial judge the lease should be declared extended and continued in force for one year and eight days from and after August 16, 1921; the written notice from plaintiffs to appellant Thompson being served one year and eight days before the termination of the four-year period. While it was found by the trial judge that the service of that notice caused Thompson and the other defendants to refrain from drilling operations, there was no further finding nor allegation nor proof that plaintiffs took any further steps that had the effect to prevent such drilling operations. Nor was there any further finding that oil could and would have been produced in paying quantities if a well had been drilled. For aught that appears in this record, the defendants might have elected to proceed to drill a well and stand upon their rights as innocent purchasers of the lease, notwithstanding the notice from plaintiffs of their contention that the lease would expire at the end of the third year. If plaintiffs, by writ of injunction, or by force or threats of violence, had prevented the defendants from pursuing their intended drilling operations, then the defendants' claim for a further extension of the lease would have been more forceful, although it is unnecessary for us to determine whether or not even in that contingency they would have been entitled to that relief. But, in view of the fact that no such means were resorted to by the plaintiffs, we are of the opinion that there is no proper basis for that relief in a court of equity. To grant the same would be, in effect, to add to the written lease a provision which the parties thereto did not see fit to include. The only decision which we have found directly bearing upon the question is one by the Supreme Court of Kansas, to wit, Lanyon Zinc Co. v. Burtiss, 72 Kan. 441, 83 Pac. 989. In that case an extension of the term provided for in the lease was sought by reason of the fact that the owners of the land had prosecuted an unsuccessful suit for a cancellation of the instrument, and following is a syllabus of the decision prepared by the court:

"The mere bringing of an action by a lessor against a lessee to have a lease declared void, unaccompanied by any restraining order or stay of judgment, even if the action is decided in favor of the lessee in the district court and affirmed in the Supreme Court, does not prevent the lessee from exercising at all times all his rights under the lease, and is no ground for invoking the equity powers of a court to extend the lease, after its term has elapsed, for a period equal to the time the action was pending, or for any time whatever."

That announcement seems to be entirely sound, and we concur in it.

For the reasons indicated, the judgment of the trial court will be affirmed, but all costs in this court and in the trial court are taxed against the appellees.